USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALEEM SHIRAZI,

               Petitioner,

    - against -

TODD CERENEY, NETZBAND, B. SHEETS,

               Respondents.

06 Civ. 6304 (JGK)

OPINION AND ORDER

JOHN G. KOELTL, District Judge:

    Saleem Shirazi brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that a prison disciplinary proceeding violated his right to due process. As a result of the disciplinary proceeding, the petitioner lost 27 days of good time credit, received 30 days of disciplinary segregation, and lost 3 months of commissary privileges. (Pet. at 3, ¶ 10.) The petitioner seeks to have the 27 days of good time credit restored. For the reasons discussed below, the petition is denied.

I.

    On Thursday, September 22, 2005, the petitioner and his cellmate, Edward Golwitzer, were housed in a Special Housing Unit ("SHU") at Low Security Correctional Institution ("LSCI") Allenwood in White Deer, Pennsylvania. (See Pet. at 2, ¶ 1.) At around 10:00 a.m., the sprinkler system in their cell was

1

activated, drenching the cell with water. (Pet. at 2, ¶ 4.) Because of the sprinkler's activation, both the petitioner and Golwitzer were charged with infractions for "[d]estroying, altering or damaging property valued in excess of $100 or altering life-safety devices regardless of value" and "[c]onduct disruptive to security or orderly running of a BOP [Bureau of Prisons] facility." (See Decl. of Saleem Shirazi, Mar. 1, 2007 ("Shirazi Decl."), Ex. D and E; Pet. at 3, ¶ 10.)

The investigating officer, SHU Officer Christopher Smith, determined that somebody had tampered with the sprinkler. (Shirazi Decl. Ex. D and E.) According to the incident report he prepared, a piece of string had been wrapped around the sprinkler head. (Id.) A memorandum from M.J. Steimling, General Foreman, confirmed Officer Smith's finding. (See Decl. of Adam Johnson, Dec. 20, 2006 ("Johnson Decl."), Ex. G.) The plumbing foreman noticed that the sprinkler head had "string much like dental floss tied to its triggering device." (Id.) Steimling concluded that "[t]he extent of damage to the trigger device indicate [sic] an external force was applied to it. All indication is it is unlikely the triggering of the head could have occurred by accident or otherwise." (Id.) The sprinkler incident caused extensive flooding, disrupted recreation, shower, and meal programs, and forced facilities workers to shut down the

sprinklers and fire alarm to reset the system. (Shirazi Decl. Ex. D and E.)

As part of his investigation, Officer Smith interviewed the petitioner and Golwitzer. His report noted that "Shirazi stated that he was sleeping when the sprinkler went off."[1] (Shirazi Decl. Ex. D.) The petitioner has consistently maintained that he was asleep when the incident occurred. (See Pet. at 2, ¶ 4.)

The Unit Disciplinary Committee ("UDC") referred the incident to the Discipline Hearing Officer ("DHO") Todd Cerney for a disciplinary hearing.[2] (See Johnson Decl. Ex. C; Pet. at 3, ¶ 9.) DHO Cerney held the disciplinary hearing on October 8, 2005. (See Johnson Decl. Ex. F; Pet. at 3, ¶ 9.) The petitioner offered a statement at the hearing: "I don't know what happened. He [Golwitzer] will tell you I was sleeping." (See Johnson Decl. Ex. F at 2.) The DHO "did not find Shirazi's testimony particularly compelling in showing no involvement in this case." (Id.) Based on the petitioner's statement to the investigating Lieutenant that he was under his blanket at the time of the incident, the DHO was led "to believe [the petitioner] was preparing for the deluge of water from the cell sprinkler system." (Id.) The DHO noted that

---

[1] In Golwitzer's incident report, Officer Smith wrote that "Golwitzer stated that he was sleeping when the sprinkler went off." (Shirazi Decl. Ex. E.)

[2] The UDC held an initial hearing on September 27, 2005, over which Unit Manager Netzband presided. (See Pet. at 3, ¶ 8.) The report of the UDC contains a statement from the petitioner, which appears to read: "My roommate said he was sharpening a pencil. It wasn't me." (See Johnson Decl. Ex. C.)

3

Golwitzer's only statement was that he did not pull the sprinkler head and that it just went off. (Id.) The DHO then wrote that "Golwitzer did not indicate Shirazi asleep" during the incident. (Id. at 3.)

In the DHO report on Golwitzer, which imposed the same sanctions that Shirazi received (minus the loss of good time credit),[3] DHO Cerney noted that both inmates had said they were sleeping at some point, but Golwitzer--at the time of the disciplinary hearing--denied that he was sleeping. (See Shirazi Decl. Ex. H.) Golwitzer also offered a statement: "How it happened, I have no clue. Shirazi was in the bed. I don't know if he was sleeping. I've been at all sorts of institutions. I've never had a problem." (Id. at 2.) As with Shirazi, the DHO "did not find Golwitzer's testimony particularly compelling in showing no involvement in this case." (Id. at 2-3.)

DHO Cerney found both inmates liable for the infraction of "Altering/Damaging a Life-Safety Device, regardless of Financial Value, Code 218" (the other infraction was expunged). (See Johnson Decl. Ex. F at 3; Shirazi Decl. Ex. H at 3.) The DHO's findings and sanctions were affirmed on administrative appeal, with the final administrative denial dated March 7, 2006. (See

---

[3] It is not clear from the evidence presented whether Golwitzer had any good time credit to lose. However, the petitioner's papers state that Golwitzer had no remaining good time credit prior to the incident. (Petitioner's Resp. at 16.)

4

Johnson Decl. Ex. I and K.) This Court received this petition on August 18, 2006.

## II.

As an initial matter, the petitioner named only the parties responsible for his discipline at LSCI Allenwood in his petition. The Government argued that the only proper respondent was the warden at the facility where the petitioner is presently detained in Otisville, New York. See Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004). The petitioner then filed a motion to amend the caption to substitute the warden of F.C.I. Otisville, New York as the respondent in the case. The Government consents to this motion and requests that the docket and caption be amended accordingly. (See Letter of Brian Feldman, Feb. 16, 2007.) The petitioner's motion to amend the caption is therefore **granted on consent**. The caption shall be amended to replace the named respondents with Warden Craig Apker, the warden of the Federal Correctional Institution at Otisville, New York.

## III.

The petitioner raises two types of arguments for why his prison disciplinary proceeding violated his right to due process. First, the petitioner argues that the DHO's decision was not supported by sufficient evidence. Second, the petitioner argues

5

that several procedural errors occurred during the disciplinary proceeding, which denied him a fair hearing. The petitioner's contentions are without merit.

**A.**

The DHO's decision was supported by sufficient evidence to satisfy the requirements of due process. In the context of a prison disciplinary proceeding revoking good time credit, due process requires only that "there be some evidence to support the findings made in the disciplinary hearing." Superintendent v. Hill, 472 U.S. 445, 457 (1985); Sira v. Morton, 380 F.3d 57, 76 (2d Cir. 2004). This Court's application of the "some evidence" standard is narrowly focused. Sira, 380 F.3d at 76. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56; accord Sira, 380 F.3d at 76. The Second Circuit Court of Appeals, however, has cautioned that the phrase "any evidence," as used Hill, is not to be construed literally; "reliable evidence" is required under the "some evidence" standard. Luna v. Pico, 356 F.3d 481, 488 (2d Cir. 2004); see also Sira, 380 F.3d at 76.

6

The facts of Hill are instructive as to the quantum of evidence sufficient to satisfy the "some evidence" standard. In Hill, a prison guard observed three inmates jogging together away from a fourth inmate who was bleeding from the mouth and suffering from a swollen eye. The guard concluded that one or more of the three inmates had assaulted the injured inmate and that the three inmates acted as a group. No other inmates were in the area where the guard observed the injured inmate. A prison "medic" concluded that the injured inmate had been beaten. The injured inmate provided a written statement that the three inmates had not caused his injury, and the respondents in the case before the Supreme Court--two of the three inmates observed jogging away from the scene--both declared their innocence before the disciplinary board. Nonetheless, on this evidence, the disciplinary board found the respondents were guilty of assault and imposed a penalty, which included the loss of good time credits. Hill, 472 U.S. at 447-48. The Supreme Court concluded that "[a]lthough the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Id. at 457.

In this case, two inmates were in a closed cell when the sprinkler was activated. Both the investigating officer and the

7

foreman concluded that somebody had tampered with the sprinkler, and provided statements to that effect. Both inmates denied responsibility for the sprinkler's activation. The DHO was free to consider the credibility of the petitioner's explanation and reject his denial of responsibility. Applying <u>Hill</u>, while this evidence might be considered meager, it constitutes "some evidence," which is sufficient to sustain the board's finding that the petitioner was liable for the infraction and the imposition of a penalty.

**B.**

The petitioner also raises various procedural objections to the disciplinary proceeding. First, the petitioner alleges that he was precluded from presenting witnesses at his disciplinary hearing. See <u>Wolff v. McDonnell</u>, 418 U.S. 539, 566 (1974) ("We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."). The petitioner alleges that, given the opportunity, he would have called his cellmate Golwitzer as an eyewitness.

However, the petitioner signed a written waiver stating that he did not wish to have witnesses (Johnson Decl. Ex. E), and the

DHO report states that he did not raise any procedural issues at the disciplinary hearing and did not request any witnesses (Johnson Decl. Ex. F). The written waiver, along with the failure to object at the disciplinary proceeding, is sufficient to constitute a waiver of any right he had to call witnesses at his disciplinary hearing. See, e.g., Marino v. Humphrey, No. 05 Civ. 6571, 2006 WL 2786182, at *4 (S.D.N.Y. Sept. 27, 2006); see also Bedoya v. Coughlin, 91 F.3d 349, 352 (2d Cir. 1996).

The petitioner responds that any waiver of his right to call witnesses was not voluntary, knowing, and intelligent. Yet even if the petitioner's waiver were for some reason invalid, on the facts of this case, any violation of his right to call witnesses was harmless. In order to prevail on a due process claim in this context, the petitioner must show prejudice. See Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991) ("[I]t is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial."). In a prison disciplinary proceeding, witness testimony may be taken outside the presence of an inmate. Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999). Also, the inmate does not have a constitutional right of confrontation or the right to cross-examine witnesses at the proceeding. Id.;

Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993); Marino, 2006 WL 2786182, at *4.

The only witness the petitioner claims he requested was Golwitzer. However, DHO Cerney conducted a parallel proceeding involving Golwitzer and received statements from both the petitioner and Golwitzer before rendering his decision in the petitioner's case. Therefore, DHO Cerney had the full benefit of Golwtizer's account of the incident in making his determination. Under these circumstances, the petitioner was not prejudiced by his inability to call Golwitzer as a witness in his disciplinary proceeding, particularly where the petitioner had no right to cross-examine Golwitzer or even be present for his testimony.

Second, the petitioner claims that Golwitzer's original statement to Officer Smith that Golwitzer was sleeping when the sprinkler was activated (see Shirazi Decl. Ex. E.) was false or altered. However, the DHO did not rely on this statement by Golwitzer (see Johnson Decl. Ex. F), and therefore the petitioner's claim that the statement was false or altered is of no consequence. The petitioner argues that the DHO mentioned this statement in his report and thus considered it. However, that language appears in Golwitzer's report (see Shirazi Decl. Ex. H), not the petitioner's.

Third, the petitioner argues that the DHO "fabricated" the petitioner's statement by taking his statement that he was in bed

10

and under his blanket at the time of the incident and placing a "spin" on the statement to conclude that the petitioner was preparing for a deluge of water. However, the DHO's inference from the petitioner's statement, whether reasonable or not, cannot be considered a fabrication. Therefore, this claim is without merit.

Fourth, the petitioner states various claims based on the photographs attached to the foreman's report. (See Johnson Decl. Ex. G.) The petitioner contends that the photographs attached to the foreman's report were false, that prison officials lied about the existence of the photographs, and questions the fact that the photographs did not depict the alleged "string" attached to the sprinkler head. As to the first two of the petitioner's allegations--that the photographs were false and were never provided to the petitioner--the petitioner cannot demonstrate prejudice. The photographs merely purport to depict the damage to the sprinkler. Damage was not contested by the petitioner. Any alleged error arising from the DHO's consideration of these photographs is therefore harmless.

With respect to the fact that the photographs failed to depict the alleged "string," the DHO was free to accept the testimony of Officer Smith and the foreman in determining that the sprinkler had been tampered with and was also free to weigh the relevance, if any, of the fact that no photograph of the string

was produced. As explained above, the DHO's decision was supported by sufficient evidence to sustain his finding that the petitioner was involved in the incident.

Finally, the petitioner alleges that the evidence supporting the result in the disciplinary proceeding was never disclosed to him. However, there is no indication that the petitioner ever raised this objection at the disciplinary proceeding or on administrative appeal, and therefore the objection is waived. In any event, the petitioner's DHO report states that "[e]vidence was verbally provided by the DHO to the extent believed practical under FOIAE/PA policy" (Johnson Decl. Ex. F at 1), and the petitioner received a copy of the DHO report (Id. at 3; Pet. at 3, ¶ 10), which clearly laid out all of the evidence that the DHO considered. Therefore, this contention also is without merit.

For all of the reasons discussed above, Shirazi's petition for a writ of habeas corpus is **denied**.

#### IV.

The petitioner also filed a motion for limited discovery. The petitioner's motion is **denied as moot** because the Government has already produced all responsive documents within the Government's possession. (See Letter of Brian Feldman, Jan. 23, 2007, at 3.)

## CONCLUSION

For all of the reasons explained above, the petitioner's motion to amend the caption is **granted on consent**. The caption shall be amended to replace the named respondents with Warden Craig Apker, the Warden of the Federal Correctional Institution at Otisville, New York.

The petition for a writ of habeas corpus is **denied**.

The petitioner's motion for limited discovery is **denied as moot**.

The Clerk of the Court is directed to enter judgment dismissing the petition and closing this case.

**SO ORDERED.**

Dated: New York, New York
May 29, 2007

_____
John G. Koeltl
United States District Judge